Donald C. WALTON, Appellant (Plaintiff),

v.

TEXASGULF, INC., a Texas Corporation, Appellee (Defendant).

Supreme Court of Wyoming.

Oct. 9, 1981.

Robert C. Wilson, Douglas, for appellant.

R. Patrick Dixon of Murne & Bostwick, Casper, for appellee.

Before ROSE, C. J., and RAPER, THOMAS, ROONEY and BROWN, JJ.

ROSE, Chief Justice.

This appeal arose from a jury verdict upon which judgment was entered in favor of the appellee on August 15, 1980. The appellant, Donald Walton, filed a motion for new trial pursuant to Rule 59, W.R.C.P., and the motion was denied by the trial court. From this order of denial the appellant raises the following issues for our consideration:

1. Did the trial court abuse its discretion in failing to grant appellant's motion for new trial on the grounds that misleading and confusing instructions were submitted to the jury?

2. Did the trial court abuse its discretion in failing to grant appellant's motion for new trial on the basis of newly discovered evidence?

3. Was reversible error committed as a result of the refusal by the trial court to allow the appellant to question a witness concerning worker's compensation after appellee had been given the opportunity to do so?

We will affirm the lower court's entry of judgment upon the jury's verdict and denial of appellant's motion for new trial.

## FACTS

Appellant Donald Walton's claim arose out of an injury he received April 27, 1976, while working as an electrician at a soda ash plant construction site, at which time he was in the employ of Brown and Root, a

Houston-based contractor. The injury occurred as a result of a fall occasioned by reason of the fact that an unknown person removed several of the bottom rungs of a ladder which Mr. Walton was descending.

The appellant brought his action against Texasgulf, the owner of the plant, alleging that his injuries came on as a result of negligence on the part of Brown and Root and that Texasgulf was liable under the doctrine of respondeat superior. The case was tried before a 12-person jury which rendered a verdict in favor of Texasgulf. Specifically the jury found that Brown and Root was not the agent of Texasgulf, that Texasgulf was not negligent, and that, while Brown and Root was negligent, its negligence did not contribute to the injuries received by appellant. The sole blame for the incident was attributed to persons unknown.

## STANDARD OF REVIEW FOR NEW–TRIAL MOTION

It is well settled that trial courts are vested with broad discretion when ruling upon a party's motion for new trial.[1] Wright & Miller, Federal Practice and Procedure: Civil § 2803 at 33 (1973). It follows that review of a trial court's decision on the issue of granting or denying a motion for new trial is limited to abuse-of-discretion considerations. We said in *Brasel and Sims Construction Co. v. Neuman Transit Co.*, Wyo., 378 P.2d 501, 503 (1963):

" 'Trial courts have always been clothed with a large discretion in the matter of granting a new trial, and their action will not be disturbed in the appellate court unless that court can clearly and conclusively say that there was an abuse of that discretion. * * * ' " (Quoting from *Elliott v. Sloan*, 38 Wyo. 276, 266 P. 1059, 1061 (1928).)

This rule has also been followed in other cases addressed by this court. *John B. Roden, Jr., Inc. v. Davis*, Wyo., 460 P.2d 209 (1969); *Opie v. State*, Wyo., 422 P.2d 84 (1967).

Since the appellant in this case has raised issues surrounding the denial of his motion for new trial, we will address each of the claims of error separately, while keeping in mind the above standard for review.

## MISLEADING JURY INSTRUCTIONS

The trial of this case involved a question for the jury on the issue of whether or not the firm of Brown and Root was the agent of Texasgulf, or whether it was an independent contractor. With respect to this issue, appellant argues that the instructions given were misleading and had the effect of confusing the jury to the extent that he was denied a fair resolution of that issue.

The jury was instructed by the trial court as follows:

"Plaintiff has alleged that Brown & Root was the agent and employee of Texasgulf, and that Texasgulf is therefore responsible for the actions of Brown & Root as its agent and employee. Texasgulf has denied the relationship of agent and employee, and has alleged that Brown & Root was an independent contractor, and that neither is responsible for any negligence of the other.

"Although an agent and an independent contractor work for another person or corporation, there is an important difference between them.

"One is the agent of its employer if it is authorized to act for or in place of that employer, and is subject to the right of that employer to control its actions.

"An independent contractor is one who, in rendering services, contracts to do a piece of work according to its own methods without being subject to the control of the employer except as to the results of the work.

"Whether one is an agent or independent contractor depends on who has the right to general and immediate control over the mode or manner in which the work is done. If the one who performs the work has the right to such general and immedi-

---

1. Rule 59, W.R.C.P., governs motions for new trial and in light of broad familiarity with it, we do not deem it necessary to set out its provisions.

ate control, it is an independent contractor. If the employer has that right, it is the principal and the other is its agent. "An independent contractor may consider and follow any suggestions that its employer may make, and the employer may make any suggestions or requests it wishes, and retain for itself a broad, general power of supervision as to the results of the work, but these things do not change an independent contractor into an agent so long as it retains the right of control over the methods to be used to accomplish the end result. An employer of an independent contractor is ordinarily not liable to others for the negligence of the independent contractor.

"Therefore, if you find that Brown & Root was an independent contractor, its negligence, if any, may not be attributed to anyone but itself, and Texasgulf may not be held responsible to Plaintiff for any negligence of Brown & Root as independent contractor.

"However, if you find that Brown & Root was acting as the agent for Texasgulf in the relationships hereinabove set forth, and was negligent and acting within the scope of its employment, all at the time of the actions complained of, its negligence must also be regarded as the negligence of Texasgulf. Conversely, if you find that Brown & Root was not the agent for Texasgulf in the relationships set forth above, or was not acting within the scope of its employment, even though negligent, all at the time of the actions complained of, its negligence may not be attributed to anyone but itself, and no one else but Brown & Root may be held responsible to Plaintiff for any of that negligence." Instruction No. 6.

After the case was given to the jury for resolution of the various issues, the trial court gave a supplemental instruction. This instruction read:

"Article XVI of the Contract purports to establish Brown & Root as an independent contractor. However, while that is evidence which you must consider, you must also consider whether or not the actions of the parties changed that Arti-

cle to the extent that an employer-agent relationship resulted. In doing this you must take into account all other provisions of the contract, the evidence presented and all other instructions given you by the Court."

Appellant Walton argues that these instructions show that the jury was misled as to the factors comprising an agency-independent-contractor relationship. Mr. Walton also urges that his proposed instructions "A" and "B" correctly state the law and that it was an abuse of discretion for the trial court to refuse to give them. These offered instructions read:

## "INSTRUCTION NO. A

"The term Employer and Employee refers to the relationship which exists when one person, employer, employs another, Employee, to do certain work. In determining whether the relationship exists, you should consider whether the relationship exists, you should consider whether TexasGulf, Inc. selected or employed Brown and Root; whether wages or other consideration were to be paid; whether TexasGulf, Inc. had the power or right to dismiss and the right to control Brown and Root, the central element is the right to control the details of performance. It matters not whether TexasGulf, Inc. actually exercised any right to control Brown and Root he may have had."

## "INSTRUCTION NO. B

"An independent contractor is one who contracts with another to accomplish a result using his own, rather than the other's, methods with respect to the physical conduct involved in the performance of the work, and, except as to the result of the work, is not subject to the control of the person who engaged him.

"In determining whether Brown and Root was an independent contractor or an employee, the consideration is whether or not TexasGulf, Inc. engaging Brown and Root, in addition to having the right to control the manner in which the work

was to be performed. You may consider the terms of the contract between the parties; the nature of the business or occupation of the parties; which party furnished the instrumentality or the tools for the work; the length of time of the engagement; the method of payment; the right, if any, of TexasGulf to summarily discharge Brown and Root; the extent to which TexasGulf exercised supervision of the work, if any; and any and all of the surrounding circumstances that tend to characterize the relationship."

On numerous occasions we have discussed the elements that must be considered by juries faced with the resolution and identification of agency-independent-partnership questions. In *Combined Insurance Company of America v. Sinclair*, Wyo., 584 P.2d 1034, 1042 (1978), we said:

> " * * * The overriding consideration in determining whether one is an employee or an independent contractor lies in ascertaining whether or not the employer has the *right to control* the details of the work whereby liability is sought to be established. *Stockwell v. Morris*, 46 Wyo. 1, 22 P.2d 189 [(1933)]. (Emphasis in original.)

The conclusion we reached in Combined Insurance Company of America was that retained right-of-control was the base determining factor in ascertaining the agent-independent-contractor relationship. In another case this court also set out a controlling definition of an independent contractor which reads:

> " ' * * * An independent contractor is one who, exercising an independent employment, contracts to do a piece of work according to his own methods and without being subject to the control of his employer except as to the result of the work. * * * " *Chapman v. Edwards*, 133 Cal.App. 72, 76, 24 P.2d 211, 213.' " *Lichty v. Model Homes*, 66 Wyo. 347, 211 P.2d 958, 967 (1949).

Taking into account these two decisions and a number of others,[2] it can be said that the law in Wyoming is clear as to the factors and standards that must be submitted to a jury when determining whether one is an agent or an independent contractor. Thus, as long as the instructions, submitted to the jury in this case, contained the elements set out above, we cannot hold that they were erroneous. Our examination of the given instructions does not permit the conclusion that they misled the jury. They did include the above-discussed elements. It may be that appellant's offered instructions accurately stated the law and were somewhat more succinct, but the failure to give them does not constitute an abuse of discretion on the part of the trial court. We believe that the supplemental instruction given by the lower court clarified any confusion the jury may have had. *Jeffers v. Offe*, Wyo., 598 P.2d 450, 451 (1979); *Zanetti Bus Lines, Inc. v. Logan*, Wyo., 400 P.2d 482, 487 (1965).

Additionally, it is worth noting that in this case the jury's determination concerning the relationship between Brown and Root and Texasgulf really had minimal effect because the jury also decided that Brown and Root's negligence did not contribute to Walton's injuries. Thus, even if it had been concluded that Brown and Root was, in point of fact, an agent or employee of Texasgulf, there was no negligence on their part which could have been imputed to Texasgulf. It has always been a requirement that a party claiming prejudicial error must show that absent such error a different result would have occurred. *Robertson v. State Highway Commission*, Wyo., 450 P.2d 1003, 1004 (1969). Even assuming error was committed in instructing the jury (which we do only for the purpose of making this point), such error did not affect the result of this case and therefore any such asserted error was harmless.

## NEWLY DISCOVERED EVIDENCE

The appellant also urges that the trial court abused its discretion in failing to

---

2. See: *Brubaker v. Glenrock Lodge International Order of Odd Fellows*, Wyo., 526 P.2d 52 (1974); *Fox Park Timber Co. v. Baker*, 53 Wyo. 467, 84 P.2d 736 (1938); *Stockwell v. Morris*, 46 Wyo. 1, 22 P.2d 189 (1933).

grant his motion for new trial on the basis of newly discovered evidence.[3] The appellant bottoms his contention in the discovery of contradictory information which was obtained from a Mr. Helm and a Mr. Patrick, who were both witnesses at trial for the defense. Mr. Helm was the plant engineer and an employee of Texasgulf, while Mr. Patrick was the safety director for Brown and Root during the time of the accident.

Mr. Helm had testified at trial mostly on the subject of safety and the enforcement of safety regulations. The subject of Mr. Patrick's testimony was similar. On cross-examination the appellant's counsel had tried, through the introduction of numerous documents, to impeach these witnesses in an attempt to show that Texasgulf was responsible for the safety program on the project. The apparent purpose of this testimony was to establish an employee-employer relationship by showing that Texasgulf had the right to control Brown and Root employees with respect to safety. In this regard both witnesses made it clear that Brown and Root was in control of all safety at the project site. Appellant filed an affidavit in support of his motion for new trial, which represented that Mr. Helm spoke to him, after the case had been submitted to the jury, and stated that on many occasions he had communicated with Brown and Root employees about safety violations. This statement tended to contradict the testimony given at trial. In addition, one day before the trial was over, appellant's counsel had a conversation with Mr. Patrick during which Mr. Patrick made statements which tended to contradict his testimony. On the basis of these two incidents the appellant made his newly-discovered-evidence claim.

The question surrounding the granting or denying of a motion for new trial on the grounds of newly discovered evidence is not a new one for this court. Our past decisions make it clear that the party seeking a new trial on the basis of newly discovered evidence must satisfy the court that: (1) the evidence has come to his knowledge since the trial; (2) it was not owing to the want of due diligence that it did not come sooner; (3) it is so material that it would probably produce a different verdict if a new trial were granted; and (4) it is not cumulative, viz, speaking to facts in relation to which there was evidence at trial. *Opie v. State,* supra, 422 P.2d at 85; *John B. Roden, Jr., Inc. v. Davis,* supra, 460 P.2d at 216. We also said in *Opie* that:

"* * * [I]t is within the sound discretion of the trial court to grant or refuse a motion for new trial based on the discovery of new evidence; and that the action of such court cannot be challenged except for an abuse of discretion. * * *" *Opie v. State,* supra, 422 P.2d at 85.

Testing the newly-discovered-evidence claims made here against the above standards, it does not appear that the nature of the new evidence was such as to require the trial court to grant appellant's motion for new trial. Concerning Helm's later statement, it appears that, even though, it may have been contradictory to what he said at trial, it was, nonetheless, merely cumulative to evidence the appellant had already produced regarding safety at the plant. Likewise, Mr. Patrick did not unequivocally represent at trial that Brown and Root ran a safe operation; the fact that he later represented off the record that the plant's safety record was way below industry standards does not rise to the cate-

---

**3.** Rule 59(a)(7), W.R.C.P., governs this ground for getting a new trial. That subsection provides:

"(a) *Grounds.*—A new trial may be granted to all or any of the parties, and on all or part of the issues. On a motion for a new trial in an action tried without a jury, the court may open the judgment, if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and direct the entry of a new judgment. Subject to the provisions of Rule 61, a new trial may be granted for any of the following causes:

\* \* \* \* \* \*

"(7) Newly discovered evidence, material for the party applying, which he could not, with reasonable diligence, have discovered and produced at the trial;"

gory of new evidence as would surely produce a different result at trial. A new trial will not be warranted where the alleged newly discovered evidence is cumulative or merely impeaching or contradictory of the former evidence. *Opie v. State*, supra, 422 P.2d at 86. We cannot conclude in this case that the allegedly new evidence was anything more than of impeachment quality. We said in *John B. Roden, Jr., Inc.*, supra, 460 P.2d at 216, that the party in whose behalf the motion is filed has a heavy burden to show an abuse of discretion and we hold that appellant in this case has failed to satisfy that burden.

### ERROR IN FAILING TO ALLOW QUESTIONS CONCERNING WORKER'S COMPENSATION

■ Lastly, the appellant argues that prejudicial error was committed below because the trial court allowed the appellee's attorney to question Mrs. Walton about worker's compensation and then refused to allow appellant's attorney to do the same on redirect examination. Appellant bases this contention on the theory that the trial judge opened the door for the original admission into evidence of this testimony and, after doing so, he cannot close the door on appellant. The appellant seems to interpret what occurred at trial a little differently than we do. As we read the record, Mrs. Walton was first called to the stand by appellant, and then on cross-examination appellee's counsel undertook to question the witness concerning worker's compensation—all without objection from appellant. Then on redirect examination appellant's counsel attempted to elicit testimony from Mrs. Walton concerning the effect of worker's compensation. This line of questioning was objected to by appellee and the objection was sustained by the trial court. Such a sequence of events leads us to the conclusion that the door was opened not by the trial court but rather by appellant's failure to object to the questioning by appellee. Clearly, the testimony was inadmissible, but it came in through the failure to object by the appellant.

Thus, the question for our determination is whether the appellant was entitled to answer the inadmissible evidence by further admission of evidence which is also inadmissible, even though he was responsible for its admission in the first instance. In an answer to a similar question McCormick reaches the following conclusion:

"* * * However, most of the courts seem to say generally that 'one who induces a trial court to let down the bars to a field of inquiry that is not competent or relevant to the issues cannot complain if his adversary is also allowed to avail himself of the opening.'" (Footnote omitted.) McCormick on Evidence, § 7 at 131, 132 (2nd Ed. 1972).

We read the above passage as supportive of the trial judge's refusal to allow appellant to question Mrs. Walton concerning worker's compensation. It is clear from the passage aforesaid that had appellee first brought up the inadmissible testimony, appellant would have had the right to go into the worker's compensation evidence. However, in this case, appellant, through his failure to object, allowed the bars of inadmissibility to be let down and he was then precluded from complaining about his adversary's reaction. Furthermore, the fact that appellant allowed such questioning without objection does not make the evidence any more admissible, and when he sought to introduce additional inadmissible testimony, it was properly rejected by the trial judge upon objection by his adversary. The basic conclusion we reach is that one who opens the door cannot complain when that same door is subsequently closed in his face.

Appellant's main problem arose out of his failure to object, and as we stated in *State Highway Commission v. Peters*, Wyo., 416 P.2d 390, 396 (1966):

"We have repeatedly said it is incumbent upon counsel *to object* to the conduct of opposing counsel and to give the trial court an opportunity to instruct the jury to disregard the same or otherwise correct the record, before alleged prejudicial error arising therefrom can be considered

on appeal. *Webber v. Farmer*, Wyo., 410 P.2d 807, 809; *Edwards v. Harris*, Wyo., 397 P.2d 87, 95."

Had appellant's counsel objected when the appellee sought to elicit the worker's compensation testimony from Mrs. Walton, and had such an objection been overruled by the trial court, then it is clear that prejudicial error would have been committed, for clearly the testimony was inadmissible. Unfortunately, appellant did not take this course and cannot now be heard to complain on appeal.

## CONCLUSION

We hold that the trial judge did not abuse his discretion in denying appellant's motion for new trial, nor was prejudicial error committed by the court in refusing to allow appellant to question Mrs. Walton concerning worker's compensation.

Affirmed.

ROONEY, Justice, specially concurring, with whom THOMAS, Justice, joins.

Except for that said in the section captioned "Error in Failing to Allow Questions Concerning Workmen's Compensation," I concur with the majority opinion. With reference to the section captioned "Error in Failing to Allow Questions Concerning Workmen's Compensation," I concur in the result but would base the result on lack of abuse of discretion by the trial judge in sustaining the objection to the questions and on the fact that there could be no prejudice from the ruling inasmuch as the case was resolved on the determination of no liability and the issue of damages (to which the questions were directed) was never reached.

Although a few courts have held that an objection was necessary to apply the doctrine of invited error in situations such as presented in this case, I do not believe that we should set such a strict requirement as is done by the majority opinion.

" * * * The party who first introduces improper evidence cannot object to the admission of evidence from the adverse party relating to the same matter.

"However, the admission of such evidence is not a matter of absolute right, but rests in the sound discretion of the court, which will not permit a party to introduce evidence, which should not be admitted, merely because the adverse party has brought out some evidence on the same subject, where the circumstances are such that no prejudice can result from a refusal to go into the matter further." 31A C.J.S. Evidence § 190a.

"Except that there are some cases to the contrary, and that the rule has been held to be limited in scope,[1] the rules stated in subdivision a of this section apply not only to the subject matter of evidence, but also to its nature. Thus, the rule that one party should be allowed to introduce evidence not in its nature such as should be received where similar evidence has been received from the other party *without objection*, subject to the exceptions, has been applied in the case of secondary evidence, hearsay evidence, declarations of a deceased person, self-serving declarations, declarations against interest, parol evidence affecting writings, opinion evidence, or conclusions of a witness." (Emphasis added.) 31A C.J.S. Evidence § 190b.

The quotation in the majority opinion from McCormick on Evidence 2nd Ed., § 57, when left in context, does not support the strict holding of that opinion. The text presents an acceptable analysis of the issue. Section 57 provides in pertinent part:

"One party offers evidence which is inadmissible. *Because the adversary fails to object*, or because he has no opportunity to do so, or because the judge erroneously overrules an objection, the incompetent evidence comes in. Is the adversary entitled to answer this evidence, by testimony in denial or explanation of the facts so proved? It has been stated that in some jurisdictions the adversary is not entitled to so meet the evidence, in others he may do so, and finally in some he may do so if

---

1. Citing cases from California, Georgia, Missouri, Pennsylvania and Texas.

he would be prejudiced by rejection of efforts to meet the evidence; but that in reaching these results many of the decisions seem merely to affirm the action of the trial court. *However, most of the courts seem to say generally that 'one who induces a trial court to let down the bars to a field of inquiry that is not competent or relevant to the issues cannot complain if his adversary is also allowed to avail himself of the opening.'*

"Many of these pronouncements do not settle the questions as to how the trial judge should deal with the problem, or as to whether the adversary is entitled as of right to introduce the answering evidence. Because of the many variable factors affecting the solution in particular cases the decisions do not lend themselves easily to generalizations, but the following conclusions, having some support in the decisions, are submitted as reasonable:

"(1) If the incompetent evidence sought to be answered is immaterial and not prejudice-arousing, the judge, to save time and to avoid distraction of attention from the issues, should refuse to hear answering evidence; but if he does hear it, under the prevailing view, the party opening the door has no standing to complain.

"(2) If the evidence, though inadmissible, is relevant to the issues and hence probably damaging to the adversary's case, or though irrelevant is prejudice-arousing to a material degree, and *if the adversary has seasonably objected or moved to strike, then the adversary should be entitled to give answering evidence as of right.* By objecting he has done his best to save the court from mistake, but his remedy by assigning error to the ruling is not an adequate one. He needs a fair opportunity to win his case at the trial by refuting the damaging evidence. * * *

"(3) If again the first incompetent evidence is relevant, or though irrelevant is prejudice-arousing, *but the adversary has failed to object or to move to strike out, where such an objection might apparently have avoided the harm, then the allow-*
*ance of answering evidence should rest in the judge's discretion.* He should weigh the probable influence of the first evidence, the time and distraction incident to answering it, and the possibility and effectiveness of an instruction to the jury to disregard it. However, here various courts have indicated that introduction of the answering evidence is a matter of right.

"(4) In any event, if the incompetent evidence, or even the inquiry eliciting it, is so prejudice-arousing that an objection or motion to strike can not have erased the harm, then it seems that the adversary should be entitled to answer it as of right." (Emphasis added.) McCormick on Evidence, supra, § 57, pp. 131–133.

In this instance, the trial court could have deemed the evidence sought to be answered to be immaterial, incompetent or irrelevant and not prejudice-arousing, and thus properly exclude introduction of answering evidence. Since the issue to which it was directed was that of damages—an issue not reached in this case, such conclusion by the trial court would have been correct. But even if the evidence sought to be answered was material, competent and relevant or prejudice-arousing, and even if it were not objected to when presented, I would consider it within the discretion of the trial judge whether or not the answering evidence should be received. *Grist v. Upjohn Company*, 16 Mich.App. 452, 168 N.W.2d 389 (1969); *Crosby v. Keen*, 200 Miss. 590, 28 So.2d 322 (1946); *Biener v. St. Louis Public Service Co.*, Mo.App., 160 S.W.2d 780 (1942). The discretion could not be said to have been here abused inasmuch as prejudice did not result, i. e. the issue of damages to which the evidence was directed was never reached.